FILED
JAMES BONINI
CLERK

2005 JUN -3 P 2: 44

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION- COLUMBUS

MARTIN V. WEBB          :
244 Foxfire Lane         :
Kingston, TN 37763       :
                         :
and                      :
                         :
WALTRAUD CARTER      :
P.O. Box 111198         :
Aurora, CO 80042        :
                         :
Individually and on Behalf of All  :
Others Similarly Situated,     :
                Plaintiffs,   :
            v.              :
                         :
CHASE MANHATTAN     :
MORTGAGE CORPORATION  :
c/o Stephen R. Meinertzhagen, Esq.  :
Burke, Warren, McKay & Serritella  :
22nd Floor, IBM Plaza        :
330 N. Wabash Ave.       :
Chicago, IL 60611         :
               Defendant.   :

Civil Action No.

**C2 05 548**
**JUDGE SMITH**

Jury Trial Demanded

**MAGISTRATE JUDGE KING**

Class Action

## Complaint

Plaintiffs, through counsel, hereby allege the following upon information and belief

based, among other things, upon the investigation made by Plaintiffs by and through such

counsel:

### I. Introduction

1

1.      Plaintiffs bring this class action on behalf of themselves and a nationwide class of all others similarly situated (the "Class") as described in paragraph 16 of this Complaint, as well as certain sub-Classes defined therein.

2.      Defendant Chase Manhattan Mortgage Corporation ("Chase") has engaged in a nationwide scheme of illegal and deceptive business practices that violate both federal and state law in the provision and servicing of loan transactions secured principally by the homes of the members of the Class.  This scheme is carried out by means of Chase's centrally controlled set of policies and practices and is implemented by Chase, its employees and agents with form documents, form notices and uniform accounting and related mechanisms.

3.      Defendant Chase routinely seeks to collect from members of the Class and does collect various improper fees, costs and charges, including unnecessary hazard insurance premiums, unexpended foreclosure-related attorneys' fees and foreclosure costs, excess interest charges and other fees that are either not legally due under the affected mortgage contracts or applicable law.

4.      Chase assesses these improper fees and costs and then charges (collectively the "Improper Charges") them to borrowers' accounts and then demands payment in various contexts including, without limitation, monthly bills, reinstatement demands, payoff statements, court pleadings, collection letters and collection calls.  Because of the superior economic position of Chase relative to those of the members of the Class, Chase's Improper Charges are then collected from borrowers' monthly payments and in other ways, such as recovery from the proceeds of foreclosure sales and loan payoffs, when the borrowers have no practical means to prevent the unauthorized deductions.

5.      Routinely, Chase also mishandles borrowers' mortgage payments and fails to timely or properly credit payments received, resulting in late charges, delinquencies and/or default.  In its

2

role as a fiduciary, Defendant Chase mishandles borrowers' escrow accounts, making unauthorized or untimely payments to itself and others from such accounts and demanding excessive escrow payments.

6.     It is also Defendant Chase's practice to force place hazard insurance covering properties securing loans serviced by Chase, including in instances where the borrower has an existing policy of hazard insurance and then to charge borrowers unnecessary and excessive insurance premiums.

7.     Plaintiffs assert that Chase has engaged in a regular pattern of conduct of violation of the requirements imposed by the Real Estate Settlement Procedures Act, 12 U.S.C. §§2601, et seq. ("RESPA"), with respect to responding to requests from borrowers for account information, provision of required notices and application of payments.

8.     Plaintiffs also allege that Chase's practices are misleading, deceptive and unfair under state law including N.J.S.A. 56:8-2 et seq., and O.R.C. § 1322.07, applicable nationwide as the state in which Chase's business practices originated, carried out and/or were consummated.

9.     Defendant Chase's practices also violate the contract and common law in each state where Chase does business with the members of the Class as described herein.

10.     Finally, Plaintiffs seek injunctive relief to prevent recurrence of the challenged conduct and to assure uniform standards of future servicing of loans and handling of escrowed funds consistent with applicable law, other equitable relief and damages for themselves and the Class generally, including restitution and disgorgement of funds obtained by the Defendant Chase, all of which conduct by Chase is in violation of state and federal law.

3

## II. Jurisdiction and Venue

11.     This Court has jurisdiction over Plaintiffs' federal claims under RESPA pursuant to 28 U.S.C. §1331, 1343 and 12 U.S.C. §2614. This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1337 inasmuch as the claims of the Class members exceed $5 million, exclusive of interest and costs, and there is diversity between at least one Plaintiff and Defendant.

12.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) and 12 U.S.C. §2614. Chase and its corporate parents conduct substantial amounts of business within this District and many members of the Class herein are located within this District. Moreover, Chase claims that its Ohio servicing center performed significant activities with respect to Plaintiffs' mortgage loans so that the alleged RESPA violations occurred, in substantial part, in this District.

## III. Parties

13.     Plaintiff Waltraud Carter is a resident of Aurora, Colorado whose home-secured loan was serviced by Chase during the period covered by this action.

14.     Plaintiff Martin V. Webb is a resident of Kingston, Tennessee whose home-secured loan was serviced by Chase during the period covered by this action.

15.     Defendant Chase is a New Jersey corporation with its headquarters and principal place of business in New Jersey. Its parent, J.P. Morgan Chase, is located at 270 Park Avenue, New York, New York, 10017.

## IV. Class Action Allegations

16.     Plaintiffs bring this action on behalf of themselves and all those whose loans were serviced by Chase on or after August 1, 1999 and/or who were affected, or whose loans and/or

4

escrow funds were affected by at least one of the following practices that are the subject of this Complaint:

        a.      assessment of excess or improper force placed hazard insurance premiums and assessment of improper flood insurance premiums;

        b.      accepting the mortgagor's payments (and negotiating any checks issued pursuant thereto) and placing the funds received in "suspense" in lieu of timely crediting them to the mortgagor's account;

        c.      negotiating payments made by or on behalf of the mortgagor but failing to credit them timely to the mortgagor's account;

        d.      incorrectly posting amounts received on account;

        e.      failing to keep and provide to Class members comprehensible and accurate records of amounts received from mortgagors on account;

        f.      assessing late fees on payments that had been received by Chase when due; and

        g.      improperly using funds held by Chase in escrow to benefit itself and otherwise misusing such funds.

        17.      The foregoing mortgagors are referred to herein as the "Class" with the Class Period being defined as August 15, 1999 to the present. Excluded from the Class are those persons and claims included within any Class which may be certified in Margulies v. Chase Manhattan Mortgage Corporation, MIDL 5812-03 (Superior Ct., Middlesex County, NJ), in any other state court proceeding and/or which claims may have been released after full disclosure of the claims being released.

5

18. Upon completion of discovery with respect to the scope of the Class and the Class Period, Plaintiffs reserve the right to amend the definition of the Class and/or any Class thereof and/or the Class Period.

19. Plaintiffs seek class certification under Federal Rules of Civil Procedure 23(a) and (b)(1), (2), and (3).

20. The Class is so numerous as to make it impractical to bring all members before the Court. The exact number of members is unknown but can be determined in records maintained by the Defendant Chase. Inasmuch as Chase is one of the biggest servicers of home mortgages, the number of members of the Class is estimated to be in the tens of thousands. In most instances, such persons are unaware that claims exist on their behalf. If the Class members have knowledge of their claims, their damages are in such amounts that, when taken individually, are too small to justify the expense of a separate, individual lawsuit. However, on a Class-wide basis, the total damages are in an amount that makes litigation financially feasible.

21. Common questions of law and fact exist as to all members of the Class. Among the questions of law and fact common to the Class are:

a. whether Chase has sought and collected fees and charges not authorized by the loan contract or not legally due and owing;

b. whether Chase has sought and collected excessive interest and/or other unlawful charges;

c. whether Chase systematically failed to properly and/or timely credit borrowers' payments to their accounts;

d. whether Chase improperly administered its borrowers' "suspense" and "escrow" accounts;

6

e.      whether Chase charged borrowers for unnecessary forced place insurance and/or collected excessive amounts for force placed insurance, premiums for which it received an improper payment or other benefit from the insurers;

f.      whether Chase issued monthly statements which failed to include accurate and required account information;

g.      whether Chase routinely failed to respond to borrowers' qualified written requests for account information as required by RESPA; and

h.      whether Chase's conduct violated the various laws, contracts and applicable standards of conduct as set forth in this Complaint.

22.      Plaintiffs' claims are based on form loan documents, standardized servicing practices, form letters, accounting standards that were used or implemented by Chase on a nationwide basis.

23.      Chase controlled and implemented the challenged practices, including those carried out by Chase from within this District from its headquarters in Edison, New Jersey. As such, for conflict of laws purposes, New Jersey state law, and Ohio state law where relevant, is applicable to all non-federal claims asserted herein.

24.      There are no substantial individual questions among the claims of members of the Class, other than the amount of damages that each Class member is entitled to receive. The injunctive relief is uniform as to all members of the Class. Common questions thus predominate.

25.      Plaintiffs' claims are typical of the claims of the members of the Class, as Plaintiffs and all other members of the Class sustained harm arising out of Defendant Chase's common course of wrongful conduct. Plaintiffs are greatly aggrieved at the damages and unfair and deceptive treatment they have suffered at Defendant's hands.

26.     Plaintiffs are adequate representatives of the borrowers whom they seek to represent. There are no conflicts between them and other Class members.

27.     Plaintiffs have suffered the same wrongs as Class members generally and are intent on seeing such wrongs remedied. They are fully committed to fairly, adequately, and vigorously representing and protecting the interests of the members of the Class. They have retained counsel competent and experienced in class action and consumer fraud litigation for this purpose.

28.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Chase within the meaning of Rule 23(b)(1)(A).

29.     Chase has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole within the meaning of Rule 23(b)(2).

30.     Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members within the meaning of Rule 23(b)(3).

31.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy within the meaning of Rule 23(b)(3) because joinder of all members is impracticable, and pursuing Class members' claims on an individual basis would be both prohibitively expensive for most Class members and inefficient from the standpoint of the judicial system. Plaintiffs know of no material difficulty likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## V. Factual Allegations:

### Defendant's Wrongful Conduct

8

32.     Commencing on a date prior to the commencement of the Class Period and through the present, Chase and one or more of its corporate affiliates engaged in a uniform scheme and course of conduct to inflate its corporate profits by charging or collecting various fees not authorized by the loan documents or applicable law.  The components of this scheme involve common tactics, including, but not limited to:

a.      failing to credit payments received in a timely manner (including payments received through automated payment mechanisms) thus generating purported late fees and profitable default-related charges;

b.      failing to provide mortgagors with timely or clear information about the timing and amount of payments owed;

c.      failing to accept and credit payments or misapplying payments received on account;

d.      mishandling escrow accounts and suspense accounts;

e.      imposing and collecting unfair and illegal attorneys' fees that have been improperly assessed, and for which proper notice has not been given;

f.      improper or unauthorized use of suspense accounts in a manner designed to prevent borrowers from resolving loan defaults;

g.      failing to properly manage escrow accounts including failing to make timely payments of taxes and insurance from escrowed funds and improperly benefiting from its holding of such funds.

33.     Chase engages in a uniform scheme and course of conduct to inflate its corporate profits by force-placing hazard insurance on properties which secure the mortgages that it services.  If a borrower fails to purchase or maintain hazard insurance on his or her property, according to standard mortgage instruments, the mortgagee can "force place," or purchase

9

insurance itself to protect the mortgagee's rights in the property, then pass the actual cost of such coverage to the borrower. Chase, however, routinely force places insurance unnecessarily where the borrower actually has insurance in place and/or where Chase improperly failed to make insurance payments from the borrowers' escrow accounts. Chase also routinely obtains coverage in amounts which far exceed the mortgagors' obligations to maintain coverage to protect Chase's actual secured interest in the underlying property as provided by the commitment letter, note or mortgage instrument. Upon information and belief, Chase receives kickbacks or other disguised benefits from the insurance companies from which it purchases such insurance and does not obtain coverage at the lowest available cost.

34.     Chase routinely fails to respond to borrowers' written disputes or requests for information made pursuant to RESPA and otherwise; fails to notify borrowers that it has force placed insurance, that it has imposed fees and charges, and that it will collect attorneys' fees and other charges in connection with collection and foreclosure activities; fails to promptly and accurately credit their accounts when payments are made and otherwise fails to provide accurate or timely information to borrowers concerning their accounts.

35.     Chase engages in these acts and omissions alone and in concert with or through others, including without limitation its attorneys, agents, investors, vendors, shareholders, and other persons and entities including its corporate affiliates.

36.     Throughout the Class Period Chase, in association with others, has engaged in a uniform scheme and course of conduct to inflate its corporate profits by force-placing hazard insurance on properties which are subject to mortgages that it services or owns. Standard mortgage instruments provide, *inter alia*, that the mortgagee can do whatever is necessary to protect the mortgagees rates and the property. Chase interprets these provisions to allow the mortgagee to procure or "force-place" hazard insurance to protect its lien interest in the property

10

should the mortgagor fail to purchase or maintain such insurance. Pursuant to the provisions, Chase may pass on to the borrower and add to the mortgage balance amount it spends to purchase insurance to protect the lien interest.

37.    Chase invokes these provisions to obtain insurance coverage from, among others, American Security Insurance Company ("ASIC"). In procuring this "coverage", however, Chase routinely obtains coverage in amounts which far exceed the mortgagor's obligation to maintain coverage to protect the lender's lien interest as provided by the commitment letter, note or mortgage instrument. Chase also "purchases" coverage for flooding and other hazards, whether or not necessary to protect its lien interests. In this respect, Chase is not authorized to purchase such excessive coverage under the mortgage instrument. Moreover, Chase routinely bills and attempts to collect from the borrowers alleged "premium disbursements" for the force-placed insurance that far exceed the ordinary charges for the former or existing policies for the same properties. Indeed, Plaintiffs believe that such premiums are not competitively priced and, despite Chase's fiduciary obligations in connection with the holding and use of escrowed funds, it makes no legitimate effort to insure that competitively-priced coverage, when needed, is obtained.

38.    Chase engages in this planned scheme and course of conduct because of and pursuant to various agreements Chase has with force-placed insurance companies. Upon information and believe, under these agreements, Chase receives a kickback or profit sharing in the coverage it allows to be force-placed on properties covered by Chase mortgages. By proceeding in this manner, Chase unreasonably and unconscionably inflates its purported "disbursements" to purchase the insurance and, rather than just protecting its lien interest, actually profits from the force-placement and inflates the borrower's mortgage loan balance and

11

interest charges as a result. See O.R.C. § 1127.03; see also O.R.C. §§ 1322.071(2) and 1322.071(3).

39. Chase places the insurance at these excessive levels even though it knows, both from its familiarity with insurance markets, as well as from its own solicitations and advertisements disseminated to mortgagors attempting to sell them insurance coverage, that suitable policies are available at far lower cost and even though it is fully familiar with the former or existing policies on the mortgage properties, including but not limited to the applicable premiums and the identity of the insurance and procuring broker or agency.

40. In many instances, the insurance force-placed by or at the direction of Chase is merely part of a general coverage agreement between Chase and the insurer, in which Chase and the insurance agree to divide the profits from alleged "premium charges" periodically based on actual loss experience in the general force-placed portfolio. Under these agreements, a mortgage property identified as having a policy lapse by Chase or its insurer, in this case ASIC, is simply added to the general coverage agreement without an actual individual policy being issued to cover the specific property. Thus, to boost its own profits, instead of merely protecting its legitimate interests, Chase bypasses lower cost insurance (which, in fact, it sells to its borrowers) and other suitable insurance at reduced rates, to generate higher commissions and profits by force-placing the insurance pursuant to kickback and profit sharing agreements it has with insurers such as ASIC. See O.R.C. § 1127.03; see also O.R.C. §§ 1322.071(2) and 1322.071(3).

41. By proceeding as outlined above, Chase obtains commissions at higher percentages and because of the inflated premiums, at far higher levels, in return for placing with ASIC and other insurers these overpriced and improper coverages. Chase also received substantial other consideration in the form of services from ASIC and other insurers and their agents, which services are funded out of the proceeds of the force-placed insurance charges. The

12

cost of these increased commissions and services is borne entirely by the members of the Class who are charged for purported "disbursements" when, in fact, Chase is really "disbursing" at least of a portion of each borrower's insurance escrow to itself. These overcharges also result in dramatic increases to each borrower's overall monthly mortgage payments and in increased interest revenues to Chase. These actions are undertaken pursuant to corporate-wide policies on standardized computer-generated correspondence.

42.    Given the incentives resulting from the agreements between Chase, ASIC and other insurers, Chase also causes insurance to be placed after-the-fact and then falsely backdated to far earlier periods (i.e., the force-placed coverage is "backdated"). This corporate practice generates purely risk-free premiums and profits, since both Chase and the insurers know at the time, or recklessly disregard the fact, that no claim has been or could have been made during that expired time. Thus, Chase and the insurers falsely charge Class members for utterly useless and non-existent insurance coverage.

43.    In this case, Chase force-placed insurance on Plaintiff Webb's property, and routinely force-places insurance on Class members' property, through a contractual arrangement it has with ASIC and other insurers. ASIC markets credit insurance products to consumer financial institutions, using various incentives to entice the financial institutions to utilize ASIC. For example, the consumer financial institutions, including Chase, receive expense reimbursements and commissions from ASIC as compensation for allowing force-placement of insurance on consumer loans. The "clients" of ASIC are the consumer financial institutions, not the consumer borrowers. Typically, these institutions, including Chase, have agreements with ASIC providing Chase with a share in the profitability of the insurance placed on the consumer loans. As a result of these agreements, Chase is incentivized to allow placement of the most

13

excessive and expensive coverage on the loans it owns or services, because it gets to share in the profits generated by the charges it passes on to and imposes on consumers.

44. With regard to the force-placed insurance here, Chase received, and continues to receive from property insurance coverage paid for by members of the Class, not only commissions but also various financial incentives from ASIC that are not disclosed by Chase to the borrowers on whom Chase has force-placed the insurance. These commissions and profits explain in large part why the coverage charges Chase imposes are double, triple or quadruple the charges available from other hazard insurance providers.

45. To the extent Chase or its affiliates receive from ASIC profits, commissions or premium participation profits, Chase has not, in fact, "disbursed" those amounts as specified by its form agreements, but instead has received kickbacks from ASIC while it has simultaneously and falsely charged its borrowers for higher "disbursements" with interest thereon. See O.R.C. § 1127.03; see also O.R.C. §§ 1322.071(2) and 1322.071(3).

46. Chase concealed from Plaintiff Webb and other affected members of the Class and did not disclose the fact that Chase was charging for insurance coverages different from, and in addition to, the property insurance authorized by the form agreement. In addition, Chase failed to disclose that it was charging as a "disbursement" amounts which were, in fact, not "disbursed" because Chase or its affiliate was and would be receiving kickbacks and/or other services, profit sharing, underwriting commissions or other benefits from ASIC. See O.R.C. § 1127.03; see also O.R.C. §§ 1322.071(2) and 1322.071(3).

47. The practices described above are part of a past and ongoing course of conduct by Chase, and are consistent with its business practices related to all customers similarly situated to Plaintiff Webb.

14

48.     During the Class Period, Chase, ASIC and others have engaged in and will continue to engage in, some or all of the following unlawful and/or fraudulent activities and practices when consumers allegedly fail to purchase or maintain hazard insurance coverage:

a)     Chase and ASIC charge, collect, and attempt to collect from consumers amounts in excess of the true cost of the insurance coverages for which the consumer is contractually obligated to pay;

b)     Chase misrepresents the amount it truly "disbursed" or "spent" for force-placed coverage, the nature of the charges for which the consumer is being billed, the customer's obligation to pay those charges, and the "premium" charges associated therewith;

c)     Chase and ASIC fail to give consumers notice before obtaining insurance on their properties, and regularly refuse to provide customers with copies of the insurance policies Chase buys for itself and do not fully inform customers of the terms of such policies;

d)     Chase and ASIC place insurance in excess of the contractual amount permitted, at inflated "costs" and in amounts or terms greater than, or unrelated to, the insurance necessary to protect the mortgagee's interest in the property;

e)     Chase places insurance without requiring insurers to underwrite the property that is to be insured, thus inflating the cost of insurance to consumer borrowers as well as Chase's profits; and

f)     Chase, together with insurance companies such as ASIC, routinely fraudulently backdates hazard insurance policies.

**Factual Allegations Pertaining to the Representative Plaintiffs**

**Martin Webb**

49.     The facts surrounding Chase's forced placement of insurance in connection with Plaintiff Webb's mortgage are typical of other Class members' experiences and illustrate how

15

Chase exploits the opportunity to force place insurance to increase its profits at consumers' expense.

50. In March, 2003, Plaintiff Webb obtained a mortgage from Mortgage Investors Group on his residential property in Kingston, Tennessee in the amount of $147,175.00. In connection with that transaction, Plaintiff executed, among other things, a Deed of Trust dated March 28, 2003.

51. On or about May 16, 2003, Plaintiff Webb received a notice that the servicing of his loan was being transferred to Chase. Plaintiff was instructed to make his June payment in the amount of $1,083.75 to Chase at a post office box in Phoenix, Arizona. In accordance with the letter of instruction, Plaintiff timely sent his June payment in that amount to Chase at the address specified in the notice, and Plaintiff has made all required payments timely to Chase since that time.

52. The Deed of Trust at ¶4 requires Plaintiff to maintain hazard insurance on the property "in the amounts and for the periods that Lender requires." The Deed of Trust also provides that "the borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes....and (c) premiums for insurance required under ¶4."

53. The Deed of Trust also provides at ¶7 that if Plaintiff did not keep his agreements under the Deed of Trust, such as maintaining hazard insurance, the lender could do and pay "whatever is necessary to protect the value of the property and lender's rights in the property." The Deed of Trust also provides at ¶7 that "any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender shall be immediately due and payable."

16

54.    At the time Plaintiff entered into the mortgage, he obtained hazard insurance for the property from Tennessee Farmers Mutual Insurance Company. The total premium for that policy for the year was $630.00 and covered the dwelling with coverage of $179,000, other structures with coverage of $26,900 and personal property coverage in the amount of $134,300. The policy also included personal liability and medical payments to others.

55.    Although Plaintiff Webb made all payments required to Chase, Chase failed to pay the insurance premiums from Plaintiff's escrow account with Chase as required by its agreement with Plaintiff.

56.    On or about October 27, 2003, Plaintiff Webb received a letter from Chase advising him that Chase did not have current policy information and requesting that he fax or have his agent fax proof of coverage to Chase at a specific number. The letter further stated that "if you do not have hazard insurance coverage for your property or we are unable to confirm that your property is adequately insured within the next thirty days, we will obtain insurance for you."

57.    Plaintiff Webb immediately telephoned his insurance broker and inquired about the coverage on his property. Plaintiff was advised that the insurance had been cancelled for non-payment. Plaintiff immediately reinstated the policy with an effective date of November 7, 2003, but at a higher price than he had previously paid for the same coverage. Plaintiff paid the premium for the year. Plaintiff immediately provided this information to Chase.

58.    By letter dated November 10, 2003, Chase advised Plaintiff Webb that "we have updated our records to show the current information. The temporary coverage that we obtained was canceled effective November 7, 2003." The letter further stated that "an insurance premium of $845.00 will be charged to your account for the period of time that the temporary coverage was in place." The letter indicated that temporary coverage was in place from July 18, 2003 to

17

November 7, 2003. Included in the correspondence from Chase was an insurance binder from American Security Insurance Company which purported to show that a binder was in place on his property beginning July 18, 2003 and expiring October 16, 2003. The purported amount of coverage for this policy was $199,600, an amount far in excess of Chase's contractual authority or insurable interest in the property. Moreover, the "annual premium" of $2,754.00 was more than four times what Plaintiff's premiums were to insure the property under a normal policy available on the market as evidenced by the policy which Plaintiff had in place prior to the date when Chase failed to pay the required premium from Plaintiff's escrowed funds. Moreover, the binder stated that it covered only Plaintiff's house and did not include coverage for, inter alia, personal property or liability.

59.     According to the binder, Chase placed the coverage in October 2003 but backdated it pursuant to its agreement with ASIC to July 18, 2003, a period of about four months, during which time there were no claims made or damage to the property.

60.     By proceeding in this manner, Chase and ASIC sought to and did generate premiums to insure the property during a time for which they knew there would be no claims in violation of law.

61.     According to the annual escrow account disclosure statement dated February 25, 2004, Chase "disbursed" the premium for the forced-placed insurance on or about November 3, 2003 shortly after it advised Plaintiff to provide proof of coverage and during the 30 day period Chase had advised Plaintiff he had to advise Chase about his insurance coverage. In addition, Chase increased Plaintiff's monthly escrow payment to cover the additional charge for the force-placed premium.

**Waltraud Carter**

18

62. The facts surrounding Chase's failure to account for payments received in connection with Plaintiff Carter's mortgage are typical of other Class members' experiences and illustrate how Chase systematically fails to account for payments it receives and systematically fails to deal with customer complaints as required by law, to its benefit and to the detriment of its customers.

63. In or about June 2001, Plaintiff Carter obtained a mortgage loan from First Union Mortgage which was serviced by Preferred Data Systems in Highlands Ranch, Colorado.

64. First Union sold the mortgage to Defendant effective December 1, 2001.

65. In June 2002, Plaintiff filed a Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code. In September 2002, Plaintiff was discharged. The Bankruptcy case was closed on June 25, 2004.

66. In December 2002, Chase sought relief from the automatic stay in order to file a foreclosure action against Plaintiff's residence contending that it had not been paid for the months of September, October and November 2002.

67. In fact, Chase had been paid by Plaintiff for those months in a timely fashion. However, according to Chase's own records, Chase had placed Plaintiff's payments in a so-called "suspense" account and had never credited her account with the monthly payments it received from Plaintiff.

68. Plaintiff, through her then attorney, Guy Humphries, provided documentation to Chase which showed that Chase had received Plaintiff's payments and had placed them in a suspense account in lieu of giving her credit for the payments. In January 2003, Chase withdrew its motion.

69. Plaintiff's problems with Chase were not over. In August 2003, Plaintiff made her monthly payment on August 5, 2003. When Plaintiff received her statement for that month,

19

it contained a message that Chase purportedly had, as of August 18, 2003, not received her payment. In the same statement it stated that a payment was received on August 18, 2003. It also contained a purportedly past due amount of $2,042.42 and late charges in the amount of $593.04. The statement also disclosed that Chase had a "suspense funds account balance" of $931.21. The statement was false inasmuch as Plaintiff Carter had timely made all her monthly payments since Chase had withdrawn its motion for relief from the automatic stay.

70.     Plaintiff attempted to contact Chase through the "customer service" telephone number provided on the statement. After a long time on the telephone, an account representative told Plaintiff that the missing payment was not in fact her August payment, but was one from February. Plaintiff had, in fact, made her February payment on time.

71.     Following the instructions of the account representative, Plaintiff wrote to Chase and sent a copy of the purportedly missing canceled check showing that Chase had, in fact, received her February payment on time. In fact, the documents supplied by Plaintiff to Chase showed that Chase had cashed that check on February 4, 2003. In her letter Plaintiff requested that Chase update its records and remove any derogatory reports made to credit bureaus. Chase never responded to Plaintiff's written inquiry in any fashion.

72.     On or about September 19, 2003, Plaintiff refinanced her mortgage because she was at her wits end in dealing with Chase.

73.     Prior to closing on Plaintiff's new mortgage, Chase supplied a payoff figure which contained interest for three months which had previously been paid. Chase revised the figures by one payment but still claimed that Chase had not received the September payment which Plaintiff could show had been received by Chase on September 9, 2003. From September 2003, when she refinanced her home, through May 2004, Plaintiff repeatedly contacted Chase to recoup the overcharges imposed by Chase at the closing, and to obtain a refund of the late fees

20

and improper attorneys fees she had paid. Chase did nothing. In or about May 2004, Plaintiff

Carter contacted the Better Business Bureau in Ohio inasmuch as Ohio is the location of the

office that Plaintiff Carter had been dealing with in attempting to obtain a refund of the amounts

owed to her by Chase.

74.     By letter dated June 22, 2004, Chase refunded to Plaintiff the amount of $847.20

purportedly for the late fees they had improperly charged her for payments that were timely

made. However, there still remained approximately $2,000.00 worth of unapplied funds which

Chase had received from Plaintiff but had never credited to her account. In addition, Plaintiff

also sought refund of all attorneys fees she had paid to Chase since Chase had improperly sought

relief from the automatic stay.

75.     In August, Chase refunded the sum of $725.00 for the attorneys fees that it had

collected for the improper bankruptcy proceeding. However, Chase has refused to refund any of

the unapplied payments or interest thereon.

76.     In addition, in order to refinance her home in August 2003, Plaintiff was forced to

expend an additional $7,500.00 which, but for the improper business practices and tactics of

Chase, she would not have incurred.

## FEDERAL CLAIMS

### Count I:  Violations of RESPA

77.     Plaintiffs reallege and incorporate by reference all preceding allegations of law

and fact.

78.     Chase violated and is violating RESPA by the following conduct:

a.     failing to meet the requirements of 12 U.S.C. §2605 regarding responding

to qualified written requests and making appropriate corrections to borrowers' accounts;

b.     failing to meet the requirements of 12 U.S.C. §2605 regarding making

timely payments of taxes and insurance from escrow accounts.

79.     Plaintiffs and members of the Class are entitled to relief under the RESPA

including damages and a declaratory judgment that Chase's conduct violates RESPA.

## STATE LAW CLAIMS

### Count II:  Unfair and Deceptive Acts and Practices
### In Violation of State Laws

80.     Plaintiffs hereby incorporate by reference all preceding allegations of law and

fact.

81.     In connection with its dealings with Plaintiffs and the members of the Class,

Chase has engaged in unfair and/or deceptive acts and practices (including making

misrepresentations and/or omissions of material facts to them) that include one or more of the

following:

a.     imposing and collecting unnecessary and excessive fees and charges not

authorized by the loan documents or by applicable law;

b.     imposing and collecting excessive interest and unlawful prepayment

penalties;

c.     failing to properly and/or timely credit customers' payments to their

accounts;

d.     improperly administering "suspense" accounts;

e.     assessing the escrow accounts of Class members for amounts not

authorized by the uniform contractual documents;

22

       f.     charging borrowers for unnecessary force placed insurance, in amounts it

is not contractually entitled

to obtain, in violation of New Jersey and Ohio state law and collecting excessive amounts for

forced place insurance premiums for which it received a kickback or other disguised benefit.

N.J.S.A. 56:8-2 et seq., O.R.C. §§ 1127.03, 1322.071(2) and 1322.071(3);

       g.     charging borrowers improper late fees;

       h.     misleading or otherwise misinforming customers about the amounts

properly due and owing;

       i.     failing to properly administer customer accounts, including, without

limitation, escrow accounts, suspense accounts, and principal and interest obligations;

       j.     engaging in conduct that violates state and federal consumer protection

laws; and

       k.     harassing or otherwise treating customers unfairly and without regard to

Chase's obligations of good faith and fair dealing owed to them.

82.     Each state where Chase does business has a law that prohibits unfair and

deceptive acts and practices, including conduct that constitutes improper, fraudulent and

dishonest dealings, such as the New Jersey Consumer Fraud Act ("UDAP laws") the Ohio

Mortgage Broker's Act, and O.R.C. 1127.03.

83.     Likewise, the consumer protection statutes of various other states prohibit the use

of deception, misrepresentation and unconscionable practices in connection with consumer

financing and provide a remedy therefor. Notwithstanding the foregoing and the additional

protection to consumers that may arise under other states laws, the New Jersey Consumer Fraud

Act and the Ohio Mortgage Broker's Act, along with O.R.C. 1127.03, protect all "consumers" in

the Class because Chase's wrongful conduct occurred in and/or emanated from New Jersey and

Ohio.

84.    The conduct described in the previous paragraph of this Complaint violates these UDAP laws including, without limitation, N.J.S.A. 56:8-2 et seq., the Ohio Mortgage Broker's Act, and O.R.C. 1127.03, applicable nationwide as the states in which Chase's business practices originated and/or were carried out.

85.    Plaintiffs and members of the Class have suffered damage by virtue of one or more of these unfair and/or deceptive practices in amounts which cannot presently be determined.

86.    Plaintiffs and the Class are entitled to relief for Chase's unfair and/or deceptive practices.

## Count III: Breach of Contract

87.    Plaintiffs reallege and incorporate by reference all preceding allegations of law and fact.

88.    Chase services loans evidenced by standard form notes and mortgages, the relevant provision of which are uniform.

89.    Chase has imposed or collected amounts that are not due and owing by contract including, without limitation, interest, prepayment penalties, and default-related fees, costs and charges.

90.    Chase had misapplied or failed to apply payments, or imposed late fees and other charges not due and/or misused escrowed funds other than for their contractually agreed upon uses, all in breach of its contracts with Plaintiffs and members of the Class.

91.    Chase has breached its contracts with the Plaintiffs and members of the Class, which has caused damages to them in an amount which cannot presently be determined.

92.    Plaintiffs and Class members are entitled to relief for breach of contract.

## Count IV: Negligent Misrepresentation

93.     Plaintiffs reallege and incorporate by reference all preceding allegations of law and fact.

94.     In the course of its business, profession or employment, or any transaction in which it has a pecuniary interest, Chase and/or its agents supplied false information to members of the Class.

95.     The false information provided by Chase and/or its agents was for the guidance of the member of the Class in their business transactions.

96.     The members of the Class who received the false information from Chase and/or its agents suffered pecuniary loss.

97.     The pecuniary loss suffered by the members of the Class was caused by their justifiable reliance on the false information provided by Chase and/or its agents.

98.     Chase and/or its agents failed to exercise reasonable care or competence in obtaining or communicating the information to members of the Class.

## Count V:  Intentional Misrepresentation

99.     Plaintiffs reallege and incorporate by reference all preceding allegations of law and fact.

100.    Chase has represented to Plaintiffs and members of the Class that Chase is entitled to collect various loan charges that were not legally due and owing.

101.    Chase's representations concerning the right to collect such fees and charges were false.

102.    Chase knew or should have known that such representations were false.

103.    Plaintiffs and members of the Class relied on Chase's false representations concerning its entitlement to collect such fees and charges and paid such fees and charges to

25

their detriment.

104.    The reliance by Plaintiff and members of the Class was reasonable or justifiable in the circumstances.

105.    Plaintiffs and members of the Class have suffered damages in an amount which cannot presently be determined.

106.    Plaintiffs and Class members are entitled to relief for misrepresentation.

### Count VI:  Breach of Duty of Good Faith and Fair Dealing

107.    Plaintiffs reallege and incorporate by reference all preceding allegations of law and fact.

108.    Each state where Chase does business recognizes a duty of good faith and fair dealing with respect to conduct encompassed by contractual relations.  Chase owes such duty to Plaintiffs and the members of the Class.  Further, Chase is in a position to control the ongoing contractual relationship between it and each member of the Class and retains and solely administers, inter alia, the manner in which borrowers' payments are applied and credited to their respective accounts.

109.    In light of its ongoing control and misuse of the funds of Plaintiffs and the members of the Class, Chase's conduct as aforesaid breaches said duties causing damages to Plaintiffs and members of the Class in an amount which cannot presently be determined.

110.    Plaintiffs and members of the Class are entitled to relief as a result of Chase's breaches of such duties.

### Count VII:  Breach of Fiduciary Duty

111.    Plaintiffs reallege and incorporate by reference all preceding allegations of law and fact.

112.    Defendant Chase acts and holds itself out as a fiduciary with respect to funds it

holds in escrow for the benefit of Plaintiffs and the members of the Class. By acting as described herein, Chase has breached such duty to members of the Class and has caused them damages in an amount which cannot presently be determined.

### Count VIII: Unjust Enrichment

113. Plaintiffs reallege and incorporate by reference all preceding allegations of law and fact.

114. Chase has engaged in unlawful collection activities.

115. Chase has collected monies that are not due and owing under applicable contract law, because the contract or other applicable law does not permit Chase to collect such fees and charges.

116. Said conduct sounds in equity under the common law of unjust enrichment or money had and received and constructive trust.

117. Chase has been unjustly enriched by its conduct.

118. Plaintiffs and Class members have suffered damages by virtue of Chase's conduct as described herein.

119. Plaintiffs and members of the Class are entitled recover from Chase its unjust enrichment (including its earnings thereupon) at their expense.

### Count IX: Negligence

120. Plaintiffs reallege and incorporate by reference all preceding allegations of law and fact.

121. Chase had a duty to act in good faith and use fair dealing as a fiduciary for the members of the Class.

122. Chase breached its duty to the members of the Class, and its breach proximately caused the damages sustained by the members of the class.

## Count X:  Declaratory and Injunctive Relief

123.    Plaintiffs reallege and incorporate by reference all preceding allegations of law and fact.

124.    Chase has engaged in and continues to engage in conduct that has a great probability of causing substantial and irreparable harm.

125.    Plaintiffs and members of the Class are entitled to declaratory relief that Chase's conduct is unlawful and that it should not be allowed to continue.

126.    Plaintiffs and members of the Class are entitled to injunctive relief necessary to insure that such conduct will not continue into the future, and to provide uniform standards of conduct for servicing Class members' loans.

## PRAYER FOR RELIEF

Wherefore Plaintiffs request that this Court certify a Class pursuant to Fed. R. Civ. P. 23(b)(1), (2) and/or (3) and award:

1.    actual, special and general damages according to proof;

2.    statutory damages and penalties;

3.    restitution and disgorgement according to proof;

4.    injunctive relief against Defendant to ensure uniform standards of servicing conduct towards all Class members and to prevent future wrongful conduct including development and implementation of appropriate procedures with respect to the handling of escrowed funds;

5.    injunctive relief against Defendant requiring it to designate an internal ombudsman to oversee Chase's handling of escrowed funds, payments on account and otherwise deal with disputes that arise with respect to the foregoing;

28

6.      prejudgment interest at the maximum legal rate;

7.      punitive, exemplary and enhanced damages according to proof;

8.      an accounting;

9.      declaratory judgment as necessary to correct the wrongs inflicted on them;

10.     litigation expenses and costs of the proceedings herein;

11.     reasonable attorneys' fees; and

12.     all such other and further relief as the Court deems just.

Respectfully submitted,

**OHIO COUNSEL:**

**DYER, GAROFALO, MANN & SCHULTZ**

KENNETH J. IGNOZZI, ESQ. (#0055431)
Attorney for Plaintiffs
131 N. Ludlow Street, Suite 1400
Dayton, Ohio 45402
(937) 223-8888
Fax: (937) 824-8630
kignozzi@dgmslaw.com

**GREENFIELD & GOODMAN, LLC**
**Richard D. Greenfield**
7426 Tour Drive
Easton, MD 21601
(410) 745-4149

**ANN MILLER, LLC**
**Ann Miller**
834 Chestnut Street, Suite 206
Philadelphia, PA 19107
(215) 238-0468

**Attorneys for the Plaintiffs and the Class**

Dated: June 3, 2005