UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Martin V. Webb,** *et al.***,**

    **Plaintiffs,**

-v-                                                                 **Case No. 2:05-cv-0548**
                                                                    **JUDGE SMITH**
                                                                    **Magistrate Judge King**

**Chase Manhattan Mortgage
Corporation,**

    **Defendant.**

## OPINION AND ORDER

Plaintiffs filed this putative class action on June 3, 2005 (Doc. 1). Defendant then moved to dismiss on August 19, 2005 (Doc. 9). On October 10, 2005, Plaintiffs filed an Amended Complaint (Doc. 15). Thereafter, on November 14, 2005, Defendant filed its second motion to dismiss (Doc. 21). Defendant moves to dismiss Counts II through VII of Plaintiffs' Amended Complaint and to strike the unsupported allegations of Count III. This Motion is now ripe for review. For the reasons that follow, the Court **GRANTS in part and DENIES in part** Defendant's Motion to Dismiss.

### I.    BACKGROUND

For purposes of ruling on Defendant's Motion to Dismiss, the Court accepts as true the well-pleaded facts set forth in the Amended Complaint (Doc. 15).

Plaintiff Martin V. Webb is a resident of Kingston, Tennessee whose home-secured loan was serviced by Defendant Chase during the period covered by this action. Plaintiff Waltraud

Carter is a resident of Aurora, Colorado whose home-secured loan was serviced by Defendant Chase during the period covered by this action.

Defendant Chase Manhattan Mortgage Corporation ("Chase") is a New Jersey corporation with its headquarters and principal place of business in New Jersey. Its parent, J.P. Morgan Chase ("JPM"), is located at 270 Park Avenue, New York, New York, 10017. JPM, however, has not been named as a Defendant. Nonetheless, Plaintiffs allege that JPM colluded with Chase to, *inter alia*, funnel prospective borrowers to Chase with full knowledge of its illegal and other improper practices described herein.

Plaintiffs Webb and Carter bring this action on behalf of themselves and all those whose loans were serviced by Chase on or after August 1, 1999 and/or who were affected, or whose loans and/or escrowed funds were affected by at least one of the following practices:

- a. assessment of excess or improper force placed hazard insurance premiums and assessment of improper flood insurance premiums;
- b. accepting the mortgagor's payments (and negotiating any checks issued pursuant thereto) and placing the funds received in "suspense" in lieu of timely crediting them to the mortgagor's account;
- c. negotiating payments made by or on behalf of the mortgagor but failing to credit them timely to the mortgagor's account;
- d. incorrectly posting amounts received on account;
- e. failing to keep and provide to Class members comprehensible and accurate records of amounts received from mortgagors on account;
- f. assessing late fees on payments that had been received by Chase when due; and
- g. improperly using funds held by Chase in escrow to benefit itself and otherwise misusing such funds.

Plaintiffs' claims are based on form loan documents, standardized servicing practices, form letters, and accounting standards that were used or implemented by Chase on a nationwide basis. Chase controlled and implemented the challenged practices, including those carried out

by Chase from within this District and from its headquarters in Edison, New Jersey.

Plaintiffs allege that Chase engages in a uniform scheme and course of conduct to inflate its corporate profits by force-placing hazard insurance on properties which secure the mortgages that it services. If a borrower fails to purchase or maintain hazard insurance on his or her property, according to standard mortgage instruments, the mortgagee can "force place," or purchase insurance itself to protect the mortgagee's rights in the property, then pass the actual cost of such coverage to the borrower.  Chase, however, routinely force places insurance unnecessarily where the borrower actually has insurance in place and/or where Chase improperly failed to make insurance payments from the borrowers' escrow accounts. Chase also routinely obtains coverage in amounts which do not fairly reflect the mortgagors' interest in the underlying properties consistent with Chase's fiduciary obligations to such borrowers.  Plaintiffs allege that Chase receives kickbacks or other disguised benefits from the insurance companies from which it purchases such insurance and does not obtain coverage at the lowest available cost to borrowers.

Further, Plaintiffs allege that Chase routinely fails to respond to borrowers' written disputes or requests for information made pursuant to RESPA; fails to notify borrowers that it has force placed insurance, that it has imposed fees and charges, and that it will collect unjustified attorneys' fees and other charges in connection with collection and foreclosure activities; fails to promptly and accurately credit their accounts when payments are made; and otherwise fails to provide accurate or timely information to borrowers concerning their accounts.

Plaintiffs assert that Chase, in association with others, has engaged in a course of conduct to inflate its corporate profits by forceplacing hazard insurance on properties which are subject

to mortgages that it services or owns, based on standard mortgage instruments which provide that the mortgagee can do whatever is necessary to protect the mortgagees rates and the property. In procuring this "coverage," however, Chase routinely bills and attempts to collect from the borrowers alleged "premium disbursements" for the force-placed insurance that far exceed the ordinary charges for the former or existing policies for the same properties and/or which would be commercially available to it to insure its own insurable interests on a mass or other basis.

Plaintiffs therefore assert that Chase unreasonably and unconscionably inflates its purported "disbursements" to purchase the insurance and, rather than just protecting its lien interest, actually profits from the force-placement and inflates the borrower's mortgage loan balance and interest charges as a result. In addition, Plaintiffs claim that Chase also causes insurance to be placed after-the-fact and then falsely backdated to far earlier periods, which generates purely risk-free premiums and profits, since both Chase and the insurers know at the time, or recklessly disregard the fact, that no claim has been or could have been made during that expired time. Thus, Chase and the insurers falsely charge Class members for utterly useless and non-existent insurance coverage.

With respect to the Plaintiff Webb, the Amended Complaint alleges that Chase failed to pay the insurance premiums from Webb's escrow account on the hazard insurance policy that Webb had obtained and the policy was cancelled for non-payment. Plaintiff Webb claims that he learned that the hazard insurance had been cancelled and he paid a one-year premium to reinstate the policy. Nonetheless, it is alleged that Chase force-placed hazard insurance on Plaintiff Webb's home that they obtained from American Security Insurance Company ("ASIC")

including coverage for the period the property was uninsured.  Plaintiff Webb was billed what he believes to be an excessive amount for this temporary coverage.

With respect to Plaintiff Carter, the Amended Complaint alleges that Chase sought relief from the automatic stay in connection with Carter's Chapter 7 bankruptcy proceeding because Chase had not received three months of mortgage payment.  Plaintiff Carter's bankruptcy counsel informed Chase that the disputed payments had been made and were placed by Chase in a suspense account.  Plaintiff Carter was then charged late fees despite Chase holding her funds in a suspense account.

The Amended Complaint also alleges that after Plaintiff Carter made her August 2003 mortgage payment, she received an account statement from Chase that stated that she owed past due amounts, late charges, and had a suspense funds account balance.  Plaintiff, however, claims that this statement was false as she had timely made all her monthly payments.  When Plaintiff Carter called Chase to inquire about the statement, she was told that they did not receive her February 2003 mortgage payment.  Plaintiff claims she sent Chase documentation that Chase had received that payment and requesting that Chase update its records and remove any derogatory reports made to credit bureaus.  Plaintiff claims that Chase never responded to her in any fashion.

Plaintiff Carter also encountered problems with Chase while refinancing her home in September 2003.  Plaintiff claims that the payoff amount Chase gave her contained interest for three months which had previously been paid.  While Plaintiff asserts that Chase did refund her improperly charged late fees and the attorneys fees charged for the improper bankruptcy proceeding, it refused to refund any of the unapplied payment or interest thereon.  Plaintiff

Carter therefore asserts that she was forced to expend an additional $7,500.00 to refinance her home.

Based on the factual allegations set forth in the Amended Complaint, Plaintiffs assert the following seven claims: violation of the Real Estate Settlement Procedures Action, 12 U.S.C. §2601, *et seq*. ("RESPA"), unfair and deceptive acts and practices in violation of Ohio state laws, breach of contract, breach of good faith and fair dealing, breach of fiduciary duty, unjust enrichment, and declaratory and injunctive relief.

## II.     RULE 12(b)(6) STANDARD

For purposes of ruling on Defendant's Motion to Dismiss, the Court accepts as true the well-pleaded facts set forth in the Amended Complaint.

A motion to dismiss for failure to state a claim should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" or unless an issue of law is dispositive. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  All well-pleaded allegations must be taken as true and be construed most favorably toward the nonmoving party.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983).  The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim.  Consequently, a complaint will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim,

or if on the face of the complaint there is an insurmountable bar to relief. *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978). Rule 12 (b)(6) must be read in conjunction with Fed. R. Civ. P. 8(a) which provides that a pleading for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356, at 296 (2d ed. 1990). The moving party is entitled to relief only when the complaint fails to meet this liberal standard. *Id.*

On the other hand, more than bare assertions of legal conclusions are required to satisfy the notice pleading standard. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* at 437.

> [W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

*Id.*

### III. DISCUSSION

**A.  Count II – Unfair and Deceptive Acts and Practices in violation Sections 1322.07(2) and (3) of the Ohio Mortgage Brokers Act; and Section 1127.03 of the Ohio Revised Code**

Defendant Chase argues that the aforementioned statutes are unrelated to the conduct alleged in Plaintiffs' Amended Complaint and therefore do not apply to Chase. Specifically, Section 1127.03 of the Ohio Revised Code regulates compensation to bank personnel such as directors, officers and employees in connection with loan originations. The statute regulates

these persons from receiving "any fee, commission, gift, or thing of value from any person for procuring or endeavoring to procure for that person * * * any loan, extension or renewal of a loan." Chase argues that it is not a "regulated person" as defined under this section because it is alleged to be a mortgage loan servicer, not a bank director, officer, or employee. Further, Chase argues that Section 1127.03 does not regulate loan servicing practices, but only compensation relating to loan origination. There are no allegations connecting Chase to the origination of Plaintiffs' loans. In fact, the original lender for Plaintiff Webb's loan assigned the servicing of his loan to Chase several months after the loan was originated and Plaintiff Carter's loan was sold by the original lender to Chase approximately six months after origination.

Plaintiffs appear to be arguing a respondeat superior theory under this statute that the improper actions were performed by employees of Chase and an employee of Chase would constitute a regulated person, therefore, the bank is responsible for the acts of its employees and agents. Plaintiffs claim that Chase charged borrowers excessive amounts for unnecessary "force place" insurance, for which Chase allegedly received kickbacks and other benefits from the insurance companies. It is this alleged improper fees and other monetary consideration, such as kickbacks that Plaintiffs argue violates Section 1127.03.

The Court agrees with Defendant that Plaintiffs have failed to state a claim with regards to Section 1127.03 of the Ohio Revised Code, as the statute applies to the origination of the loan. Defendant Chase was not involved in the origination of Plaintiffs loans, therefore, cannot be held liable under this statute.

Defendant Chase also argues that Section 1322.071 is not applicable to this case as it regulates the conduct of mortgage brokers, not banks or mortgage loan servicers. Plaintiffs agree

that Section 1322.99 applies to mortgage brokers but asserts that there is a question of fact as to whether Chase is a mortgage broker under the Act. Plaintiffs argue that a mortgage broker is one who holds itself "out as being able to assist a buyer in obtaining a mortgage and charge or receives from either the buyer or lender money or other valuable consideration readily convertible into money." See O.R.C. § 1322.071. Plaintiffs argue that Chase has taken improper acts involving mortgage loan transactions and Chase has received monetary consideration for such services, therefore Chase is a mortgage broker under the aforementioned section.

Plaintiffs merely argue that Chase fits the definition of mortgage broker, but do not set forth any facts as to how Chase was involved in the origination of Plaintiffs loans. In addition to Plaintiffs general assertions, they direct the Court to *Lashua v. Lakeside Title and Escrow Agency*, 2005 WL 844973 (Ohio App. April 11, 2005). The Court agrees with Defendant, however, that this case is not applicable to the case at bar because *Lashua* did not involve a borrower's claim against an entity such as Chase that was not involved in the original mortgage transaction. Plaintiffs' claims as asserted in the Amended Complaint apply specifically to the servicing of mortgage loans not the origination of such loans. Therefore, Plaintiffs have failed to state a claim under Section 1322.071(2) and (3). Count II of the Amended Complaint is therefore dismissed.

**B.     Count III – Breach of Contract**

Defendant asserts that Plaintiffs' breach of contract claim fails to meet the pleading requirements of Rule 8(a), specifically that Plaintiffs failed to allege exactly what contractual provisions Chase allegedly breached. Plaintiffs respond by citing specifically Rule 8 of the

Federal Rules of Civil Procedure and case law applying Rule 8. In accordance with Rule 8, a plaintiff must set forth a complaint that contains a "short plain statement of the claim showing that the pleader is entitled to relief."

The Court is concerned with Plaintiffs failure to allege what specific provisions of what contract(s) Defendant allegedly breached. Plaintiffs have essentially made conclusory allegations, rather than specific claims. Plaintiffs argue that under Rule 8, they are permitted to simply plead conclusions and not required to specify particular legal theories nor plead specific facts. "Even under our liberal pleading standards, a plaintiff must at least 'give the defendant fair notice of what [the] claim is and the grounds upon which it rests.'" *In re Commonwealth Institution of Securities, Inc.*, 394 F.3d 401, 405-406 (6th Cir. 2005), *quoting Conley v. Gibson*, 355 U.S. 41 (1957). In considering the sufficiency of a complaint, a "court is not required to accept non-specific factual allegations and inferences or unwarranted legal conclusions." *Abner v. Ford Motor Co.*, 83 Fed. Appx. 778, 779 (6th Cir. 2003).

Plaintiffs, however, do appear to refer generally to all of the contractual documents relevant to this case, such as the mortgages, deeds of trust, and the standard form notes. Further, Plaintiffs argue that Defendant has violated the mortgage by imposition and collection of amount that are not due and owing and misapplication and failure to apply payments and misuse of escrowed funds. While the Court has expressed its concern over this claim asserted by Plaintiffs, it does find that the claim is sufficient to satisfy the liberal Rule 8 notice pleading requirements. During the discovery phase, Plaintiffs will be required to disclose the specific contractual provisions they claim Defendant has violated and if nothing more specific is provided, this will

most likely be an issue for summary judgment.  Therefore, Defendant's Motion to Dismiss Count III is denied.

Defendant Chase also moves to strike conclusory general allegations contained in Count III that do not relate to Plaintiffs Webb or Carter's loans.  Specifically, in paragraphs 87 and 88, Plaintiffs allege injuries suffered by unidentified members of the purported class, not either Plaintiff Webb or Carter.  Rule 12(f) provides that, "[t]he court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Defendant argues these allegation are immaterial and impertinent because they do not involve any specific harm to either named Plaintiff and therefore should be stricken.

Plaintiffs argue in response that the action of striking a pleading should be sparingly used by a court, partly because of the practical difficulty of deciding cases without a factual record. *Brown and Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953). Further, on a motion to strike, all well-pleaded facts must be accepted as true.  The Court agrees and for this reason, denies Defendant's motion to strike the conclusory allegations in Count III. Plaintiffs have alleged Defendant has harmed them by making bold, conclusory allegations that do not appear to be very specific and do not refer to specific instances against Plaintiffs Webb or Carter.  This is another issue that, if no further information is provided during the discovery phase, may be appropriate for summary judgment.

**C.     Count IV – Breach of Contract / Breach of Duty of Good Faith and Fair Dealing**

Defendant argues that Count IV of the Amended Complaint should be dismissed because there is no independent cause of action for breach of contract and breach of duty of good faith

-11-

and fair dealing.  Under Ohio law, there is no tort cause of action for breach of covenant of good faith that is separate from a breach of contract claim, and, if a breach of duty of good faith and fair dealing is asserted as part of a contract claim, it must be alleged as part of that contract count,

and may not stand alone.  *Lakota Local School Dist. v. Brickner*, 108 Ohio App.3d 637, 646 (Ohio App. 1996).

Plaintiff, on the other hand, argues that their Amended Complaint is in compliance with Rule 8(e)(2), which allows for a party to set forth two or more statements of a claim or defense alternatively, either in one count or two separate counts or defenses.

Notably, with respect to this claim, both parties have correctly cited the applicable law and appear to be arguing the same thing, but Defendant ultimately seeks dismissal of Count IV. The Court, however, finds that Plaintiffs are asserting one claim for breach of contract with alternative counts.  Therefore, Plaintiffs may only recover on one claim or a combination of the breach of contract claims, but not both.  Specifically, a claim for breach of the duty of good faith and fair dealing does not exist on its own.  At this stage in the proceeding, the Court nonetheless will permit Plaintiffs to proceed with alternative breach of contract theories and therefore Defendant's Motion to Dismiss Count IV is denied.

**D.    Count V – Breach of Fiduciary Duty**

Defendant argues that Count V of Plaintiffs' Amended Complaint should be dismissed because a lender does not owe a borrower a fiduciary duty as a matter of law.  "The relationship

of a debtor and creditor without more is not a fiduciary relationship." *Umbaugh Pole Bldg. v. Scott*, 58 Ohio St.2d 282, 286 (1979). Plaintiffs argue, however, that special facts and circumstances can make the relationship between a mortgagor and mortgagee a fiduciary relationship. Specifically, Plaintiffs argue that, by Defendant's creation and use of "suspense" accounts for Plaintiff Carter's payments, as well as under the express terms of the mortgage, Chase made itself a fiduciary with respect to Plaintiff Carter's funds and others. Plaintiffs further allege that Defendant breached this fiduciary duty when it engaged in self-dealing with Plaintiffs' money, such as transferring the money to itself and not crediting the proper accounts.

While Plaintiffs correctly argue that "a fiduciary duty may arise from an informal relationship only if both parties understand that a special trust or confidence has been reposed," *Cairns v. Ohio Savings Bank*, 109 Ohio App.3d 644 (Ohio App. 1996), the Court finds that Plaintiffs have failed to set forth sufficient facts to assert that such a duty was established in this case.

Count V of the Amended Complaint states that Chase "holds itself out as a fiduciary with respect to funds it holds in escrow for the benefit of Plaintiffs." (¶ 112). In *Cairns*, the court rejected a breach of fiduciary duty claim based on a lender's administration of escrow accounts. The plaintiffs in *Cairns* brought a class action against the defendant-bank that was the borrowers' lender and loan servicer, alleging the bank kept an escrow "cushion" for their accounts that was in excess of the amount allowed under their mortgage's contractual provisions and RESPA. 109 Ohio App.3d at 645. The *Cairns* plaintiffs argued that the bank's management and control over their escrow account gave rise to fiduciary duties of honesty, loyalty, and trust. But the *Cairns* court held that the bank "is required by the terms of the mortgage agreement to

-13-

disburse funds to pay the appellants' property taxes and their homeowners' insurance; however, this does not create a relationship in which 'special confidence and trust is reposed in the integrity and fidelity' of [the bank]." *Id*. at 649.

In the case at bar, as in *Cairns*, there is nothing in the mortgage agreement, and no special set of circumstances that establishes a fiduciary duty. Therefore, Defendant's Motion to Dismiss Count V of the Amended Complaint is granted.

### E.     Count VI – Unjust Enrichment

Defendant argued that Plaintiffs' claim for unjust enrichment should be dismissed because the Alleged Complaint does not allege the essential element of that claim – retention of a benefit. Plaintiffs did not even address this argument in their Memorandum in Opposition.

To state a claim for unjust enrichment in Ohio, a plaintiff must allege that the defendant retained a benefit conferred by the plaintiff under circumstances where it would be unjust for the defendant to retain that benefit. *Cooper v. Smith*, 155 Ohio App.3d 218 (4th App. Dist. 2003).

Despite Plaintiffs' failure to address this argument in its brief, the Court has reviewed the Amended Complaint and agrees with Defendant that Plaintiffs have not asserted what, if anything, Defendant has allegedly retained. Plaintiff Webb alleges that Defendant collected insurance premiums but Defendant did not retain those premiums -- they were disbursed to the insurance company. Plaintiff Carter's claims discuss assessing late charges and attorneys fees to her account, however, it is later stated that she was reimbursed for those charges. Therefore,

Plaintiffs have failed to allege that Defendant retained anything from Plaintiffs unlawfully to justify an unjust enrichment claim. Therefore, Plaintiffs' claim for unjust enrichment is dismissed.

### F.     Count VII – Injunctive Relief

Defendant argues that Plaintiffs have not alleged any continuing conduct with respect to the servicing of either of Plaintiffs' mortgages in which Defendant could be enjoined from engaging. To be entitled to injunctive relief, a party must allege some sort of ongoing conduct to be enjoined. *Lemley v. Stevenson*, 104 Ohio App.3d 126 (Ohio App. 1995).

Plaintiffs argue that Defendant Chase is involved in an ongoing scheme to inflate its corporate profits by charging or collecting various fees not authorized by the loan documents or applicable law. Specifically, Plaintiffs argue that Defendant Chase continues to hold money belonging to Plaintiff Carter and continues to charge Plaintiff Webb for the unnecessary excessive insurance it purportedly purchased for him.

Defendant correctly argues that harm that has already occurred cannot be remedied by an injunction. With respect to Plaintiff Carter, she is not experiencing any ongoing harm as she refinanced her loan and no longer has any contact with Chase. The only harm she has alleged occurred in the past and can be remedied under one of the other claims asserted in the Amended Complaint. With respect to Plaintiff Webb, the Amended Complaint primarily asserts claims for actions that have occurred in the past, such as assessing the charge for unnecessary insurance premiums. Plaintiff even claims that he was able to obtain his own insurance coverage. The

Court is unclear at this time whether Plaintiff Webb is, in fact, experiencing any ongoing harm that could be remedied by injunctive relief.  The Court will nonetheless deny Defendant's Motion to Dismiss Count VII with respect to Plaintiff Webb to allow for further discovery on this issue.  Defendant's Motion to Dismiss Count VII with respect to Plaintiff Carter is granted.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendant's Motion to Dismiss as to Counts II through VII of Plaintiffs' Amended Complaint and to Strike the unsupported allegations of Count III of Plaintiffs' Amended Complaint.  Counts II, V, VI, and VII shall be dismissed with prejudice.  Counts I, III, IV remain pending.

The Clerk shall remove Doc. 21 from the Court's CJRA pending motions list.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　 */s/ George C. Smith*
　　　　　　　　　　　　　　　　　　　　　　**GEORGE C. SMITH, JUDGE**
　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT COURT**